# Exhibit B

# Plaintiff's Complaint



D78169470 INI

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

SAINT TORRANCE                    :    Case No. A0804320
2766 W. NORTH BEND RD # 2
CINCINNATI, OHIO 45239            :    Judge:

                Plaintiff         :    Magistrate:

vs.                               :

CITIFINANCIAL MORTGAGE COMPANY, INC    :
300 SAINT PAUL PLACE, BSP13A
BALTIMORE, MD 21202-2120          :

and                               :

FIFTH THIRD BANK                  :
38 FOUNTAIN SQUARE PLAZA
CINCINNATI, OHIO 45263            :

and                               :

ACE MORTGAGE FUNDING, LLC         :
8600 GOVERNORS HILL DR, SUITE 110
CINCINNATI, OHIO 45249            :

and

PROSPER MARKETPLACE, INC
111 SUTTER ST, 22ND FLOOR
SAN FRANCISCO, CA 94104
C/O
PROSPER MARKETPLACE, INC
268 BUSH ST, BOX 3134
SAN FRANCISCO, CA 94104           :

and                               :

CREDSTAR
6350 LAUREL CANYON BLVD, 4TH FLOOR,
NORTH HOLLYWOOD, CA 91606         :

and                               :

                                  :

ORIG. COMP. PARTIES, SUMMONS
( ) CERT MAIL   ( ) SHERIFF   ( ) WAVE
( ) PROCESS SERVER   ( ) NONE
CLERKS FEES _____ TIC
SECURITY FOR COST
DEPOSITED BY _____ Z9997
FILING CODE _____ H82.0

FILED
2008 MAY -1 P 1:42
GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY, OH

CBC INNOVIS                                          :
875 GREENTREE RD, 8 PARKWAY CENTER
PITTSBURGH, PA  15220·                               :

and                                                 :

KROLL FACTUAL DATA                                  :
5200 HAHNS PEAK DRIVE
LOVELAND, CO 80538                                  :

and                                                 :

EXPERIAN INFORMATION SOLUTIONS, INC :
475 ANTON BLVD.
COSTA MESA, CALIFORNIA 92626-7037                   :

and                                                 :

TRANSUNION-L.L.C.                                   :
555 W. ADAMS ST, 6th FL
CHICAGO, ILLINOIS                                    :

---

## COMPLAINT

---

Now comes Saint Torrance in the above caption case, a disabled Veteran on a fixed

income and I have a condition. I am a residence of Cincinnati, Hamilton County, and presently

have applied for loans, from these lenders, Insurance and the Credit Reporting Agencies with

these inaccuracies on my credit report.

Jurisdiction and Venue are proper with these Defendants name in this Complaint above.

Citifinancial Mortgage Company, Inc is doing business in Cincinnati, Ohio at there address of

5872 B cheviot Road, Cincinnati, Ohio 45247, Fifth Third Bank doing business in Cincinnati,

Ohio 45202, and all other defendants in this Complaint is doing business in Cincinnati, Hamilton

County, Ohio.

## FACTS

CITIFINANCIAL MORTGAGE COMPANY, INC (EXHIBIT #1)

1. I been doing business with Citifinancial Mortgage Company, Inc starting way back in the day around the year of 2000. CMCI had filed a foreclosure on Torrance D. Smith filed in Common Pleas Court case no. A0108043, which was my old name at the time and my new name is Saint Torrance changed in year 2005. This foreclosure was filed on November 14, 2001 and closed an released on August 6, 2002 to CMCI.

2. During this time frame from 2002 until present Saint Torrance a/ka/ Torrance D. Smith had been through tough times with this company and still present experiencing the same thing with CMCI. First I filed a Bankruptcy Petition Chapter #7, on September 11, 2002 Case No. 02-16796, for my all debt to be discharged and was granted a discharged on January 8, 2003, from Federal Bankruptcy Court.

3. Citifinancial Mortgage Company, Inc had taken upon themselves to still report this debt being current from the time of my discharge in 2003 until I filed a Adversary Complaint Case No. 1:06-AP-01324 in Bankruptcy Court in 2006. CMCI still continues to harass me and find some way to get back at me for this previous loans I had received from Citifinancial Mortgage Company, Inc which over the duration still not attempt to help a Black Man being a Disabled Veteran on a fixed income.

4. On August 24, 2007, I applied for a personal loan after Citifianancial had taken care of this information that was wrong on my credit report. I first applied for a mortgage with Intercontinental Mortgage Company in 2004 and was turned down because of these inquires these companies were still reporting to the credit reporting agencies, which is hereto attached to

this Complaint to reestablish my credit and obtain three trade lines of credit which is required from lenders to receive a mortgage loan once again, before I can get back in to being an Investor once again and to obtain a home or a four family and a new vehicle. I attempt several applications to receive a vehicle which it took about 12 to 15 application or less but I know that these attempt lead to all these inquiries and I am a disabled veteran which I did not know it would keep by credit score to drop real fast. I obtain a vehicle in 2006, after I had filed my Adversary Complaint against Citifinancial and another Creditors that were still reporting on my credit report which were all placed in my Bankruptcy Petition chapter #7 and Discharged by a Courts.

5. On February 21, 2008 I applied for a mortgage again with Citifinancial Mortgage because my previous loan with Decision One Mortgage was a predatory lending loan that was bad loan from the beginning, which is pending in Federal District Court Case Number No. 1:08-CV-0074. I applied with Citifianncial because my loan was bad and I had goal to reach with me becoming an Investor again. I explained to Citifinancial that I need a great loan with a cash out to do things with my building like remodel the kitchens and a couple of other things because I know now the market is very scary now on all these foreclosures out here but I went in knowing that I always do fixed rates because of my income so that qualifies me as fixed rate mortgagee and not a adjustable rate like other homeowners. I applied for at least 20,000.00 loan with Citifinancial where I pay my personal loan at this location on Cheviot Rd. I had closed on this loan with my mortgage thinking that the 20,000 would come from this mortgage refinancing but was explain from this office on cheviot that the were going to give me the loan of 20,000, through refinancing my car loan again to receive this 20,000 to fix up my property to get it reappraised later to treat myself after I treat my tenants and allow them to love where they live now on my

property which new kitchens, security front door and my goal was to change the broiler out to up to date furnace where I could try to make the tenant more responsible on heat and water and would probably go down on there rent but this mortgage I have received from Citifinancial Mortgage paints another picture that will explain here in this Complaint that this loan with Citifinancial Mortgage Company, Inc I had just closed on February 28, 2008 is a loan that also shows a pattern of bad loans towards Disabled Veterans and probably towards other disabled people on fixed incomes too.

6. My income allows me to handle property valued at 220,000 or probably more than that, They had given me a good faith estimate $170,000.00 and $180,000.00 and the apprisal came back at 170,000.00 which my loan is over this amount by the new law that out and sign by president Bush on Predatory lending law. My total mortgage is $176,594.03 which is over the apprisal valved that Citifinancial Mortgage Company, Inc had given me which show that CMCI could have given me a bigger loan amount to receive my 20,000.00 to fix up my property just like my counter parts which other have mortgage and qualify for a equity cash out loan to improve there property to keep there property running sufficiently.   This loan with CMCI also have balloon payment at the beginning of the loan and was explained after I read it that the loan says a payment of $2,549.78 on April 10, 2008 and then $1,763.47, I called and asked about this situation on or about April 18, 2008 where I thought the extra payment was for Insurance premiums purposes.  I was explained by this Cheviot Rd Branch Office that it for the daily interest on the loan from February 28, 2008 to April 10, 2008. I then told them with a certified letter to correct this loan which this letter was sent on April 8, 2008 and have still have not responded to this letter of correction this loan where this company is not above the law just like I'm not above the law.

This monopoly player has money to prolong this case and drag it out which show that our system is felling again and will be destroyed again and again here come destruction like said in the BIBLE. CMCI still playing games which will destroy themselves inside out and don't even see it coming.

The loan is a bad loan and Plaintiff had requested this loan be corrected but it seem like when I send a letter it does no good with these Monopoly Players until I file a Complaint. Is any company following the law with out attitude towards a disabled person.

## FIFTH THIRD BANK (EXHIBIT #2)

7.   I applied with Fifth Third Bank to obtain a refinancing on my property and to seek other financing on single family homes and to get back into becoming Investor again with a Chris Urti Senior Mortgage Loan Originator located at 3656 Springdale Rd. I applied for a loan on 2-11-2008 with this loan officer and still have be given the runaround and still have not received help from the bank I been doing business with since 1990. I still attempt to do business with Fifth Third but it seem like I a second class citizen again and I'm a Disabled Veteran on a fixed income trying to keep my credit up and to play my credit back with a promise but every time I apply for a mortgage I' still turned down and I know I fall in a different league because of my fixed income not being taxes and my credit is better than most in the sub-prime loan department.

I just recently called Mr. Urti in April 2008, about receiving a loan from Fifth Third Bank which from my branch manager asked me to do business with them and look what I get in return with Fifth Third Bank trying to do business in obtaining a loan. I was given instruction from Mr. Urti about my credit report and I explained to him that there a situation I have already with credit reporting agencies in bankruptcy court with violation to my report and Mr. Urti referred me to

CBC Innovis about my credit report and I did send a letter and say they are not on the same accord with my credit report and called the attorneys for each credit reporting agencies and explained to them that there are two different credit score being reported from TransUnion was #656 on 1-2-2008 and with CBC Innovis was #583 almost a 73 points drop in my credit score which will given me a high interest rate a lower debt to ratio and pain and suffering to do the Cause & Effect rule clause.  Fifth Third Bank doing business with CBC Innovis which is causing a problem on my credit report, interest rate, inquiries, credit score and the biggest thing is not obtaining what I want in society just like everyone else has.  I am not being treat ed equal and I feel like destroying things because of these companies trying to control me and if you are then here I come to destroy you but you will destroy yourself way before I even get near you, please watch people at your job right next too you, you will see archangels and angels right there next too and didn't even know which is keeping a recording of that companies every move.

### ACE MORTGAGE FUNDING LLC (EXHIBIT #3)

8.  On February 12, 2008, I came to Ace Mortgage to obtain refinancing my current residence of 3182 Werk Rd, Cincinnati, Ohio 45211. During this application process I made inquiry about other loan programs asking about the VA, FHA, 203K, that President Bush came out with some new programs too.  I also asked about if I can Purchase the property I'm currently in because I found out through Ace Mortgage that my loan was a (Interest Only Loan) with some prepayment penalties, balloon payment,  mortgage payment increase and no benefit to make sure I can refinance and obtain more property to become and Investor again.

9.  I was given a Truth-In-Lending Statement from Ace Mortgage from a Benjamin Bridges, a

Loan Officer for Ace Mortgage.  This Statement had given an excellent interest rate of 7.826%

from me already having a First and Second Mortgage on this loan.

10.  On March 18, 2008, Ben Bridges emailed me a list of items to close on this refinancing loan

and I Saint Torrance followed up with letter to Ben Bridges on March 18, 2008 explaining what

was emailed to me from Ben Bridges on Mach 18, 2008 items needed to close this loan.  On

March 19, 2008 I emailed and explain that items were related to my Bankruptcy Petition and had

given them the case no. 02-16796.  Then on March 25, 2008, he sent me the same thing of items

need and I have faxes all those items already sent to them on March 19, 2008 and again on March

26, 2008. On March 27, 2008 I emailed Ben Bridges what he requested from me and I requested

in this email a copy of my Apprisal to be emailed too me too. I also sent a Letter to Ben Bridges a

loan Officer for Ace Mortgage a letter explaining what items that he were requesting with a

reason here attached to this letter date March 27, 2008.

11.  I had filed a Federal District Court Complaint against the current Lien holders.  Decision

One was the current lien holder of this deed on February 28, 2007 and was sold to Saxon

Mortgage and Franklin Mortgage on or about June of 2007.  I had supplied Ace Mortgage Loan

Officer Chad Curtin use to be my personal loan officer on a prior occasion with dealing with my

family probate issues and now became the Vice President of Ace Mortgage which is Chad Curtin

a copy of this Complaint of these Defendants in Federal District Court was ask to be produce to

him which I had fax a copy to him on April 2, 2008 which were 11 pages sent to Chad Curtin.

12.  Around about the 6, 7 of April 2008 I had talk with Chad Curtin pertaining to the loan where

he told me that the underwriter was requesting February and March and now April 2008 payment

were not made which I had already explained the situation on this matter but Chad Curtin was

still persisting on where are these non-payments of these two months would be enough and he told me he will get back with me and the second time talking about this situation again told me to explain to Chad Curtin that there is no reporting of me being late because of this current Complaint filed in Federal District Court pertaining to this loan which is predatory Lending violations. I still did not get a respond pertaining to what the underwriter not approving this loan based on what Chad Curtin told me was about this two payments.

13. On April 11, 2008 I sent and email to Chad Curtin asking for other loans and a bigger loan to do some home improvements to kitchens, broiler, central heating and air and to make the building cost efficient so I could probably drop tenant bills and Duke Energy bill too.

14. On April 22, 2008 I sent a letter of Intent to file against Ace Mortgage failing to close on a loan or any loan that would qualify me to do so based on my income and the present situation which will stop me from my goals  which are being a Investor in real estate because of my income and past experiences.

14. This current page is a Sent Journal pertaining to Ace mortgage fax number which is 513-552-7071.


PROSPER MARKETPLACE, INC (EXHIBIT #4)

15. On April 12, 2008 I applied to do business with Prosper Marketplace, Inc which is a Internet Mortgage and loan Company.  I filled out the necessary paper work to establish an account for banking transfer and consumer relationship with Prosper Marketplace, Inc their Internet connection is Prosper.com.  I had given my social security number to this company and they had done a credit check and came out with Credit Score of #520-530 with the Credit Reporting Agency Experian Scorex Plus(sm) report.  Plaintiff has two cases pending with Experian

Information Solutions, Inc which is in Federal District Court Case No. 1:07-CV-054and

Bankruptcy Court Adversary Case No. 07-01316 and still pending. I have direct lines to their

attorneys Mr. Andrew G. Fiorella which is Experian Info Sol, Inc attorney and Laura K Allen

which is with TransUnion LLC attorney. I have two different numbers from Prosper.com is

#520-530 and with Experian Inc. I have a credit score of #676 coming from Experian Inc

attorney emailed to Plaintiff on March 7, 2008. Prosper.com has me in a credit grade (HR)

which only allows amount of $5,000.00 loan from them to get accepted without any problems.

My credit score being #676 with Experian, Inc tell that there are two different credit scores and

one of these parties to this Complaint is lying or doing business illegal causing my interest rate

and based on my income to not be fair in obtaining a loan which my credit score allows me to fall

in a ( C ) class which gives me a better chance of getting a loan amount of 25, 000.00 and a better

interest rate on my loan with Prosper.com but prosper is pulling a report from Experian Scorex

Plus which has nothing to do with Experian Inc had give my credit score to be #676. We have a

problem with corporations on a whole different page and Credit Reporting lying to individuals

with a be quite, wont tell credit report score. Prosper .com is doing business with Experian, Inc

and have two different credit score which is show a "Cause & Effect" rule of trickery, bribery,

fraud and we can name a lot more problems why consumers adverse inquires are not taken care

of until a court claim is filed which keep American rolling with employment for all now that

beautiful and dangerous for archangels. I had faxed Prosper.com which Prosper Marketplace, Inc

on April 21, 2009 a ten pages pertaining a copy of Transunion LLC, Inc credit report that had

emailed from their attorney Laura K. Allen on 2-21-2008, with a credit score of #663 and today

on April 29, 2008 had faxed a copy of Experian, Inc credit report and credit score of #676 as of

March 7, 2008.

16. On April 22, 2008, I received a email letter from Prosper.com trying to explain this new system which is the Experian Scorex Plus which business only one can obtain this report which is already discriminatory to a protected class which si already on a fixed income and still being treat like second class citizens. If both Experian, Inc and Prosper.com is not on the same page by Federal Law then your in violation of the Fair Credit Reporting Act of 2003, the other Credit Reporting agencies are too in violation of making money illegal that includes TransUnion, Equifax, Inc, CSC Credit.

17. Experian, inc attorney explained to me he will look into this matter and in the mean time I had file this Complaint for a double standards with my credit being entrusted with a agencies with to many discrepancies on my credit report.

CREDSTAR (EXHIBIT SEE EXHIBIT #3)

18. On February 12, 2008 I applied with Ace Mortgage for a refinancing loan to receive a cash-out with the intentions of fixing up my kitchens, furnace upgraded for my four family which I was a landlord before with numerous properties before in the year of 1998. My first and second mortgage loan was considered a Predatory Lending Loan which is a non benefit loan for Plaintiff future of Investing in real Estate again. I received a loan from Decision One on February 28, 2007 and this first mortgage loan was transferred to Saxon Mortgage Services, Inc on June 1, 2007 and my second mortgage loan was transferred to Franklin Credit Management Corporation on June 1, 2007, I was explained by Ace Mortgage that everything was looking great for the loan and was told by Ace mortgage that I would be closed on a loan with in seven days well that was not accurate.

19. I received a copy of my credit report from Credstar on the same day I applied for my loan which was on February 12, 2008. I received a credit score from all three reporting agencies: TransUnion: 587, Experian: 578, Equifax: 623. I was told being above #580 get you 100% financing this information was from Chad Curtin of Ace Mortgage which they proceeded with the loan see Ace Mortgage part of this complaint and Exhibit hereto attached to this Complaint.

20. On March 27, 2008 I notified Credstar of the inaccurate information on my report and they told me to get with the credit reporting agencies to correct what need to be corrected. I told Credstar that you are in violation of a Federal law under the Fair Credit Reporting Act of 2003. I also explained to Credstar that I have a direct line to these three Credit Reporting Agencies attorneys for TransUnion , Experian, Equifax and CSC Credit. I request that these inquires be corrected from Credstar but they told me that I would have to correct them with the agencies and I told them they have already been corrected by be associating with these credit reporting agencies attorneys and already having a up to date report and that Credstar was not current in their report which is a violation of federal Law.

21. Credstar choose to ignore this request and have Plaintiff to work on this correction which is a big mistake. I am a disabled veteran and I do not work for no person only my father, and if I do work for a person I'm not good with taking order from a person and I get sick and start to relapse back in to a homicidal mode and begin to plot to destroy you at all cost, now I know Credstar does not want this kind of condition I have to hunt them because it very upsetting to the business world and for people to function in the work world as being friendly.

22. These credit score or not the same as what was given to me from these Credit reporting Agencies which shows a violation of law not business. I informed them to correct the items.

**CBC INNOVIS (EXHIBIT SEE #2)**

23. On February 11, 2008 I applied with Fifth Third Bank which is also a party to this Complaint. I was advised by Mr. Chris Urti of Fifth Third Bank Senior Mortgage Loan Originator that their were some items on my credit report that need to be corrected and I told Mr. Chris Urti that I have a direct line to all three credit reporting agencies attorneys and can have this corrected in no time. I also explained to CBC Innovis on February 25, 2008 about my credit score and if I apply for a loan my credit score will have I high Interest rate and that not good as to what is happening to the mortgage industry now.

24. On March 27, 2008, I sent another letter to CBC Innovis explaining removal of New Millennium Bank account no. #5183933010015964 and Liberty Saving account no. #4552150. CBC Innovis responded by sending a letter on April 10, 2008 referencing that these disputes are being submitted for corrections. During this thirty day process which show that CBC Innovis had reported the wrong credit score as well as some creditors on my report that should have already been remove from Plaintiff report. CBC Innovis has a duty just like these three credit reporting agencies to make sure everything is accurate and if not both are in violation of the Fair Credit Reporting Act of 2003 and my disability condition as a protected class under ADA, and blocking me from my fresh start where my income, debt ratio, establishing my trade line to be productive in society as a Investor. CBC Innovis explained it would take about thirty days to correct and I explained you have already blocked me from obtaining property because of these credit scores being wrong and inaccurate information on my report.

## EXPERIAN INFORMATION SOLUTION, INC

25.  Experian is doing business with these two Third Party companies Credstar and CBC Innovis. After these Third Parties Credit Reporting Agencies: CBC Innovis and Credstar told me to get with these credit reporting agencies to correct these inquires I called Mr. Andrew G. Fiorella which is the attorney representing Experian Inc in a case that is pending in Bankruptcy Court Adversary Case No. 07-01316.  I had contact him and he explained to me that he will get right on it and investigate this situation with Experian, Inc.  I had received a credit report score of #676 on March 2008 from the attorney Mr. Fiorella which is the attorney for Experian Inc.  I received a Credit report from Credstar has my credit score as: Experian, Inc # 578, TransUnion #587, Equifax #623 and  CBC Innvios credit score: Experian #578, Transunion #583, Equifax #623 now why is these credit score not current even when these two Third Parties credit reports inquirers to these credit reporting agencies not current as to what I have with TransUnion being a credit score of #663 and now #659, Experian credit score is # 676 currently and I seeing two different  scores from the attorneys and from these third parties credit reporting companies Credstar and CBC Innovis which is not current and has allowed me to work which is a violation of my condition which makes me sick and want to do homicidal ideals and plot them out too. On April 12, 2008 I applied for this new company on the Internet by the name of  Prosper.com which is name Prosper marketplace, Inc is the owner of this web site for personal loans.  I had applied and was given a credit score of only 520-530 which qualifies me for only a small amount loan with this internet company like $5,00.00 dollars I was try to obtain at least $25,000.00 to 30,000.00 but with there credit score of 520-530 only entitles me to $5,000.00 dollars which I was seeking $25,000.00 to 30,000.00 with high interest rate for the lenders with this prosper,com program.  I had emailed and faxed this company twice explaining about this credit score and the

one I have from Experian, Inc which was #676 and their credit score was 520-530 which

Prosper.com explained to me that they were obtaining my credit score from Experian Scorex Plus

system for business companies only, and I explained to them your in violation of the Fair Credit

reporting Act of 2003 of not being on the same page as to the credit score received from

Experian, Inc which was given to me on march 2008 at a score of #676.  I faxed them two time

related to these credit reports received from TransUnion and Experian, Inc on April 21, 2008 and

another one on April 29, 2008.


TRANSUNION LLC

26.  On April 22, 2008 and on April 29, 2008 I received a email from prosper.com explaining

that there is a Experian ScoreX Plus and this system does not have nothing to do with the Credit

scores I receive from Experian, Inc credit score of being #676 and Prosper.com credit score being

520-530 which is a 156 point drop which show a bulling in our system of credit which is control

which leads to destruction of law and who serving who sound in nature of Monopoly players

again.  I notified TransUnion LLC attorney a Ms. Laura K. Allen who is representing TransUnion

LLC in a Bankruptcy Adversary proceeding case no. 07-01316 still pending. TransUnion as

given me a credit score of #663 dated 2-21-2008 and I applied for a mortgage with Union nation

Mortgage Company to continue my Investor purpose to achieve my goals.  I was told by Union

National Mortgage Company that my credit report score was #512, now I have direct lines to

these credit reporting agencies and the last time I received a credit report and score which had

given me with TransUnion was #663 and as of April 2008 a credit score of #659 three point

different.    T was informed by Union National Mortgage that in order form to go forward I must

correct my credit report and I explained to them and emailed a current copy to Union national

Mortgage Company from TranUnion attorney Ms. Allen which shows a current credit report and credit score of # 663 and or #659 which I was explained by Union national Mortgage company I need a #580 to obtain 100% financing to obtain a purchase of another property which I already currently owner of a four family.  I was explained that I can obtain a single family home with a 100% financing after Union National Mortgage company reviewed my credit report there was credit score of only #512 and I was explained by Union National Mortgage Company that I have to get my score up to #580 and or get with Kroll factual Data to correct these adverse inquires on my report.  Kroll factual Data is Third Party Reporting Agencies that pulls credit report just like these other two Defendants Credstar and CBC Innovis.  TransUnion is reporting two different numbers too these Third Party Agencies which is causing a Blockage of me becoming a Investor again with my income, expense and debt to ratio qualifies me for at least four single homes or four families again like I had back in 1998 as being a landlord.

## KROLL FACTUAL DATA (EXHIBIT #5)

27.  On or around Aril 12, 2008 I applied for a loan with Union National Mortgage Company, Inc to obtain a loan for purchasing a new home and moving out of my four family building and renting out this one bed room apartment and in the process obtaining a cashout to fix up my four family kitchens, boiler to change to up to date furnaces which would save on energy, money and environment.  I received a copy of my credit report from Union National Mortgage Company, Inc. Which had Kroll Factual Data is the Third Party Agency that Union national Mortgage Company, Inc had pulled my report from which is a defendant to this Complaint.  I notified Kroll Factual Data by letter sent by fax to them on April 21, 2008. (Exhibit # ). I had attached to this fax a copy of TransUnion LLC credit report and score dated 2-21-2008 of # 663.

On or abut the 22nd or 23rd of April, 2008 I received a call from Kroll Factual Data explaining about the incorrect inquiries on my report. I was explain that I would have to get with TransUnion LLC to correct these inquiries and I explained to them I'm currently with the attorney of TransUnion, LLC and I have case pending with TransUnion in Bankruptcy Court and in federal District Court. I have access to correcting my report right on time which should not take thirty days by the law Kroll Factual Data refers too. I explained too them that your holding me up to obtaining a home and improvements to my four family do you do this all the time to disabled veterans I'm just thinking what Kroll Factual Data is doing to ordinary people who pay on time with their mortgages, bills and any other expenses.

28. Kroll Factual Data explained to me that it will take at least 30 to 60 days to correct and I explained this matter will go before a court of law but I explained to them that if it not fixed with in days I will pursue this in a court of law, and now I'm here to this day keeping my word as promise and they have not corrected my credit report in a few days which does not take 30 days to 60 days to do if I have these attorneys on a direct line to these agencies to fix the problem and send Union National Mortgage Company, Inc a up to date copy so I can obtain financing to purchase a home I seen which I like to move into.

CLAIM I

OHIO HOMEBUYERS PROTECTION ACT

OHIO CONSUMER SALES PRACTICE ACT

29.  Citifiancial Mortgage gave me a loan without any benefits promised to me which were at
least $20,000.00 to do some improvements in my four family to the kitchens, broiler being
replaced to a new furnace which can reduce my expense and the tenants expense on rent. I was
explained by Citifinancial Personal Department where I applied for this Mortgage, my Loan
Officer Angie Olthaus that it would be good to get the loan through your personal loan which I
already have on my 1990 Honda Accord 2dr Coupe as collateral for this personal loan I have
already with them as of October 2007 which I was told by previous lenders I have to establish
three trade lines of credit which have done and still getting the runaround which I have a income
that is not taxed, debt to ratio excellent and credit score: TransUnion #663, Experian #676,
Equifax #615. Citifinancial had given me a Mortgage of 12% which had taken with a benefit
attached to it to receive this twenty thousand ($20,000) for improvements for my property and
misc. items too.  I looked at my loan and seen this big payment of $2,549.78 due on April 10,
2008 and another payment $1,763.47 due on May 10, 2008, and then I looked at the loan again
and it said Total amount of first month's payment including insurance premiums, if any $
2,549.78, That when I called and explained to Angie Olthaus that I have already started payments
with Allstate which is my insurance company and she explained to me that not what the payment
is for it for the loan starting February 22, 2008 to first payment on April 10, 2008 which is the
interest on the loan and I was not explained that and did not understand why it was not already
taken out like all my other loans I received, I was told that that not how Citifinancial does it.  I

sent a letter to the main office explaining about this new predatory lending law that out but it seem that Citifinancial Mortgage Company, Inc still doesn't response to letter being sent to them by a Disabled veteran with a condition if they do a disabled person just imagine what they are doing to regular working people.  Closed on this loan on February 22, 2008 and still have not receive by benefits to improve my building and was told by Angie my loan Officer that the loans have not been paid off by these other mortgage companies and it not being reported by the other mortgage companies. I received a payoff from Saxon Mortgage and ask my loan officer Angie to get a copy of these checks being cashed in the month of March and still have not received a copy from my loan Officer yet and here is April 2008.

30.  Fifth Third Bank, Ace Mortgage, Prosper.Com were companies and my loan Officer which I applied for a loans and have gotten the run around again with this credit report from Fifth Third Bank and have not closed on my loan with Ace Mortgage.  Ace Mortgage giving me an excuse from the lenders requesting payments from February 2008 and March of 2008 and when I came to them and they pulled my credit report,  they had seen a Interest Only Loan which made my mortgage to go up instead of down which would allow me to have equity in my property.  I explain that the loan I had was bad Loan and asked them could they refinance this loan with a better loan and a cash-out to fix up my property just like any other landlord.  Prosper.com had given me a different credit score of 520-530 and my last reports from the credit reporting agencies were #615, #676, #663.

32.  These companies fell to obtain a loan for Plaintiff in this matter, causing me to get sick and wanting to destroy them and now I'm getting homicidal ideals for the run around to obtain a loan to better myself, can not sleep at night on medication and it not helping now that why I'm here in the court house, this is the last hope.

## CLAIM II

### FAIR CREDIT REPORTING ACT 2003

33. Credstar, CBC Innovis, Kroll Factual Data, Experian, TransUnion are in violation of my credit report not being accurate and which is causing me to not obtain a loan to improvement my property and to get back in to becoming an Investor again. I am a Disabled Veteran and on a fixed Income which is above average then a person on social security because of my Veteran pay give me a edge because I'm not taxed on my income which given me a excellent debt to ratio and my credit report of #676 from Experian, Inc and TransUnion LLC #663 and Equifax, Inc #615 tells a story of what lenders look for which I'm doing to try to obtain a loan to become and Investor again with the intention to learn what went wrong when I had the property back in 1998 to 2002, But I can't because I'm being blame for something and these lenders are not telling me why where I cross every "T" and dotted every "I" and still someone trying to control me my life and that a big no! no! Because I work for someone very special too me and that my father and grand father too.

Respectfully submitted,

Saint Torrance
2766 W. North Bend Rd #2
Cincinnati, Ohio 45239
(513) 541-8522
(513) 290-5445
Phattoe4@Yahoo.com

## PRAYER FOR RELIEF

22. Plaintiff ask the court for Actual, declaratory, civil, injunction relief

23. Compensatory damages for each count and defendant in the amount $100,000.00.

24. Punitive damages for each count and defendant in the amount of 1,000,000.00.

And for cost, fees, and for such further relief as the court deem proper.

Respectfully submitted,

Saint Torrance
2766 W. North Bend Rd #2
Cincinnati, Ohio 45239
(513) 541-8522

CitiFinancial
300 Saint Paul Pl, BSP13A
Baltimore, MD 21202-2120

(800) 922-6235

Saint Torrance                                          March 4, 2008
3182 Werk Rd Apt 2                                      Ref # 350043FF025662
Apt 2                                                   CCNCFI
Cinti, OH 45211

Thank you for your interest in a CitiFinancial Real Estate Loan for $13,449.00.
For well over half a century, we've built a reputation for working very hard to
find ways to get our applicants money when they need it. We are disappointed that
we cannot approve your application at this time.

We are required by law to provide you with the following information:

CitiFinancial considers a number of factors in making credit decisions. We use a scoring
system based on an analysis of credit-related characteristics of our applicants and our
customers. For real estate loans, additional factors, such as the equity in your home, also
are considered. Our review process may also include information obtained from a credit
reporting agency. This agency was not involved in our decision on your application and
cannot provide you with the specific reasons for our decision.

If you would like a statement of the specific reasons why your original request was denied,
please contact us at our customer service department within 60 days of this letter's date.
We will provide you with a statement of reasons within 30 days of our receipt of your
request. Please include the reference number and the date of this letter on all
communications.

Under the Fair Credit Reporting Act, you have the right to obtain a free copy of your report
from the credit reporting agency listed below within 60 days of the receipt of this notice :

Equifax Credit Services
PO Box 740256
Atlanta, GA 30374
www.equifax.com/fcra
1-800-685-1111

You also have the right under the Fair Credit Reporting Act to dispute with a credit
reporting agency the accuracy or completeness of any information in any consumer report
furnished by the credit reporting agency.

Every year CitiFinancial puts millions of dollars in the hands of people all around
the country to help fulfill their dreams. Should your circumstances change in the
future, we would welcome the opportunity to explore the ways we could help you
fulfill yours.

                                                       Sincerely,
                                                       CitiFinancial

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the
basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the
capacity to enter into a binding contract); because all or part of the applicant's income derives from any public
assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit
Protection Act.  The federal agency that administers compliance with this law concerning this creditor is the
Federal Trade Commission, Equal Credit Opportunity, Washington, D. C.  20580.
You may consider contacting a credit counseling service, such as the National Foundation for Credit Counseling at
1-800-388-2227 for a list of their offices or visit their website at www.nfcc.org.

citi financial                                         EX. 4

                                                       cchd01

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| SAINT TORRANCE<br>3182 WERK RD<br>CINCINNATI OH 45211 | CITIFINANCIAL, INC.<br><br>5872 B CHEVIOT RD<br>CINCINNATI OH 45247 | ■5344 |
| | | Date of Loan<br>02/22/2008 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 12.00 % | $ 464,234.73 | $ 171,400.78 | $ 635,635.51 |

**Payment Schedule:**

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 2,549.78 | 04/10/2008 |
| 359 | $ 1,763.47 | MONTHLY BEGINNING  05/10/2008 |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower is giving a security interest in:
☐ Motor Vehicle   ☐ Mobile Home
☒ Real Property   ☐ Other:

**Late Charge:** If a payment is more than 10 days late, Borrower will pay a late charge of 5.0 % of the scheduled payment amount or $ 15.00 , whichever is greater.

**Prepayment:** If Borrower pays off early, Borrower:
☒ will not ☐ may  have to pay a penalty; but will not be entitled to a refund of part of the finance charge.

\* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premium, if any. | PRINCIPAL | ORIGINATION FEE/POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $2,549.78 | $ 176,594.03 | $ 5,143.25 | 02/27/2008 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid . The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less.

If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

Any such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

I/We request the following insurance:

| Cost Premium | Insurance Type | Insurance Term (in mos.): | | |
|---|---|---|---|---|
| $ NONE | Modified Automobile<br>Single Interest | | First Borrower's Signature | Date 2-22-08 |
| $ | | | | |
| $ | | | Second Borrower's Signature | Date |

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as:  Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premium.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | | |
|---|---|---|---|---|
| $ NONE | | | First Borrower's Signature | Date 2-22-08 |
| $ NONE | | | | |
| $ NONE | | | Second Borrower's Signature | Date |

(\* First year's premiums are calculated on the assumption that monthly loan payments are timely made. Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

Borrower's Initials: ___

SAINT TORRANCE                                                                    3375344        02/22/2008

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the Rate of Interest of    11.61 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A   month anniversary of the Date of Loan shown above, the Rate of Interest applicable to the remaining unpaid Principal balance shall decrease to N/A   % per annum until the balance is fully paid.

Any amount shown above as an Origination Fee or Points or both has been paid by Borrower as a prepaid charge and is in addition to the above Rate(s) of Interest. Any such fees are earned prior to any other interest on the loan balance. These amounts will not be refundable to Borrower in the event of prepayment of the loan.

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted by the then applicable law, or if no maximum rate is prescribed, at the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement at maturity.

**PREPAYMENT:**

[X]  If this box is checked, Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

[ ]  If this box is checked, Borrower prepays the entire outstanding Principal amount of this loan during the first two (2) years from the date of the loan, Lender may charge Borrower a prepayment penalty equal to a percentage of the amount prepaid as follows: for prepayment in full within one year of the date of the loan, 2% and within two years, 1%.  Upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

Upon partial prepayment, interest will continue to accrue upon any remaining principal balance.  Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

**SECURITY AGREEMENT:**

[ ]  A.  If this box is checked, this loan is unsecured.

[ ]  B.  If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property".  See below for additional terms applicable to this security interest.

1.  Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |

2.  Other Property:

[X]  C.  If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage dated   02/22/2008   on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at  3182 WERK RD
CINCINNATI OH 45211                                  . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**INSURANCE:** If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LATE CHARGE:** If any installment is paid more than   10   days after the scheduled payment date, Borrower agrees to pay a late charge of   5.0  % of the unpaid payment amount or $   15.00   , whichever is greater. To determine whether a payment is late, payments will be applied in the order in which they were due. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

**DEFERMENTS:** In Lender's sole discretion, Lender may agree to allow Borrower to defer payment of a monthly installment prior to on its due date without Borrower being considered in default. In consideration of any such deferment, Borrower agrees to immediately pay all interest owing on the account to the date of the deferment. Each deferment will extend the final payment date by one month.  All other terms and conditions of the Disclosure Statement, Note and Security Agreement, including the expiration date of insurance coverage, remain unchanged by an authorized deferment.

EX. 1

SAINT TORRANCE                                                        ##5344          02/22/2008

**RETURNED CHECK FEE:** Lender may charge a fee of $ 20.00 for a check, negotiable order of withdrawal or draft that is returned for insufficient funds or insufficient credit.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the real property.

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement.

After default, Borrower shall pay Lender's costs and disbursements in connection with any suit to collect on a loan or any lawful activity to realize on a security interest or mortgage on Property securing the loan, including reasonable attorney fees incurred by Lender as a result of the suit or activity and to which Lender becomes entitled by law.

**EFFECTS OF DEFAULT:** If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such public sale, Lender may purchase the Property. The proceeds of the sale, minus the expenses of taking, removing, holding, repairing and selling the Property, including reasonable collection costs, as authorized by law, and minus the cost of paying off and removing any superior liens or claims on the Property, will be credited to the unpaid balance of Borrower's loan.

If the proceeds of sale are not sufficient to pay off the entire balance plus costs, Borrower agrees to pay the remaining amount upon demand. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property. Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

**LAW THAT APPLIES:** Ohio Mortgage Loan Laws which apply to consumer loans and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower agrees that Lender can change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

(Intentionally left blank)

Ex. 1

SAINT TORRANCE                                                       ☒5345      02/22/2008

**AUTHORIZATION TO USE CREDIT REPORT:** By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked: ☐

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If this loan is secured by a first lien on real estate, the Federal Depository Institutions Deregulation and Monetary Control Act of 1980 governs the provisions of this agreement relating to interest, discount points, and finance charges, and pre-empts any state laws regulating these charges.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESS:

SIGNED:

_____ (Seal)
SAINT TORRANCE                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

CITIFINANCIAL, INC.

By: _____
(Name and Title)              02/22/2008 15:55:34

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____     _____ (Seal) _____
Signature                      Date         Signature                      Date

OH 25211-17 1/2007        Original (Branch)      Copy (Customer)      *Ex. 1*      Page 4 of 4

*SAINT TORRANCE*

# GOOD FAITH ESTIMATE - RESPA

ESTIMATED
LOAN AMOUNT: $ 170,000.00

LENDER: CitiFinancial
5872 B CHEVIOT RD
CINCINNATI          OH 45247

02/22/2008

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement which you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| NUMBERS FROM HUD-1 FORM | DESCRIPTION OF CHARGES | ESTIMATED AMOUNT OR RANGE |
|---|---|---|
| 801. | LOAN ORIGINATION FEE*     3.0000 % | $ 5,143.25 |
| 802. | LOAN DISCOUNT FEE           % | $ |
| 803. | APPRAISAL FEE** | $ 450.00 |
| 804. | CREDIT REPORT | $ |
| 805. | INSPECTION FEE | $ |
| 1101. | SETTLEMENT OR CLOSING FEE | $ |
| 1102. | ABSTRACT OR TITLE SEARCH FEE | $ 210.00 |
| 1103. | TITLE EXAMINATION | $ |
| 1104. | TITLE INSURANCE BINDER | $ |
| 1105. | DOCUMENT PREPARATION FEE | $ |
| 1106. | NOTARY FEES | $ |
| 1107. | ATTORNEY'S FEES | $ |
| 1108. | TITLE INSURANCE | $ 687.75 |
| 1111. | | $ |
| 1112. | TAX SERVICE FEE (FIRST MORTGAGE LOAN ONLY) | $ 50.00 |
| 1113. | | $ |
| 1201. | RECORDING FEES | $ 44.00 |
| 1202. | CITY/COUNTY TAX/STAMPS | $ |
| 1203. | STATE TAX/STAMPS | $ |
| 1204. | | $ 0.00 |
| 1205. | RELEASE FEE | $ 0.00 |
| 1301. | SURVEY | $ |
| 1302. | PEST INSPECTIONS | $ |
| 1303. | | $ |
| 1304. | FLOOD CERTIFICATION FEE | $ 0.00 |

*  These points may not provide a net savings to the borrower.
** Fee for full appraisal, Automated Valuation Model (AVM), Broker Price Opinion (BPO), or Comparative Market Analysis (CMA).

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA).

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED
Listed below are providers of service which we require you use. The charges or range indicated in the Good Faith Estimate above are based upon the corresponding charge of the below designated providers.

| ITEM # | SERVICE PROVIDED | PROVIDER'S NAME AND ADDRESS | TELEPHONE # | RELATIONSHIP |
|---|---|---|---|---|
| 804 | Credit Report | EQUIFAX<br>P.O. BOX 740241<br>ATLANTA, GA  30364 | 800 685-1111 | ☒YES ☐NO |
| 1112 | TAX SERVICE | First American Real Estate Tax Service<br>8435 N Stemmons Freeway<br>Dallas, Texas 75247 | (214) 879-6000 | ☒YES ☐NO |

Unless a service provider is identified above, Lender will require a particular provider from a lender-controlled list and the range of costs for the required provider(s) are shown above.

Any relationship which exists between lender and provider of service is based solely on the repeated use of that provider during the last twelve months, except in the case of Finiti, LLC who is an associate of Lender. Finiti's service may not be available in all states. You may inquire of Lender regarding its services in your state.

The tax service provider identified above will provide the service only when such service is required by Lender.

RIGHT TO RECEIVE A COPY OF AN APPRAISAL: If an appraisal report is obtained in connection with your application for credit, you are entitled to a copy of the appraisal provided you have paid or are willing to pay for the appraisal. A request for a copy of the appraisal must be submitted in writing to the lender, at the address shown above, within 90 days of the date on which you are notified about the action taken on your credit application or, if you withdraw your application, within 90 days of the withdrawal.

You should be aware that the overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds you wish to borrow.

The undersigned acknowledges receipt of this Good Faith Estimate of Charges, that there may be other lenders and affiliates offering services similar to Lender's, and that Lender has encouraged Applicant to compare Lender's loan services and pricing with others.

_____
Applicant

_____
Applicant

211352-3 9/2006 (GA, MA, NJ, NM, OH)   Original (Branch)   Copy (Customer)

*Ex. 2*

*APPRISAL* 3182 Wink Rd
Cit: Financial

Owens Appraisals Inc.

**Small Residential Income Property Appraisal Report**   File No. 005510   5461

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 3182 Work Road | City Cincinnati | State OH | Zip Code 45211 |
|---|---|---|---|

Borrower Terrance Saint   Owner of Public Record Saint   County Hamilton
Legal Description Lot 6 Kupplin Sub
Assessor's Parcel # 211-0087-0264-00   Tax Year 2006   R.E. Taxes $ 3,767.00
Neighborhood Name Kupplin   Map Reference See Attached   Census Tract 1640.102.91
Occupant: ☐Owner ☒Tenant ☐Vacant   Special Assessments $ N/A   PUD   HOA $ N/A   ☐per year ☐per month
Property Rights Appraised ☒Fee Simple ☐Leasehold ☐Other (describe)
Assignment Type ☐Purchase Transaction ☒Refinance Transaction ☐Other (describe)
Lender/Client Citifinancial   Address 5872-B Cheviot Road, Cincinnati, Ohio 45247
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐Yes ☒No
Report data source(s) used, offering price(s), and date(s). N/A

☐ I did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
There is no current contract to purchase.

Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record? ☐Yes ☐No   Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐Yes ☐No
If Yes, report the total dollar amount and describe the items to be paid.  $ N/A

| | | | | | | | | PRICE | AGE | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location ☐Urban ☒Suburban ☐Rural | Property Values ☐Increasing ☒Stable ☐Declining | One-Unit 85% % |
| Built-Up ☒Over 75% ☐25-75% ☐Under 25% | Demand/Supply ☐Shortage ☒In Balance ☐Over Supply | $(000) 135 (yrs) 40 | 2-4 Unit % |
| Growth ☐Rapid ☒Stable ☐Slow | Marketing Time ☐Under 3 mths ☒3-6 mths ☐Over 6 mths | Low 135 40 | Multi-Family % |
| | | High 195 85 | Commercial % |
| | | Pred. 170 55 | Vacant 5% % |

Neighborhood Boundaries The boundaries are Work Road to the north, Sylved Lane to the west, Clevas Warsaw Pike to the south and Beuting Avenue to the east.
Neighborhood Description The subject is located in the Westwood section of Hamilton County, Ohio. The subject's immediate neighborhood consists primarily of detached single family residences interspersed with 2-4 and multi-family units.

Market Conditions (including support for the above conclusions) General market conditions are currently stable with conventional financing prevalent. No significant loan discounts or market concessions that would adversely affect market values exist. A relatively short marketing time indicates a balanced supply and demand in the current local market.

Dimensions 73' x 118'   Area .20 Acres   Shape Rectangular   View Nothing adverse
Specific Zoning Classification C   Zoning Description Residential Multi-Family
Zoning Compliance ☒Legal ☐Legal Nonconforming (Grandfathered Use) ☐No Zoning ☐Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? ☒Yes ☐No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Macadam | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐Yes ☒No   FEMA Flood Zone X   FEMA Map # 360216 0188D   FEMA Map Date 05/17/2004
Are the utilities and off-site improvements typical for the market area? ☒Yes ☐No  If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc)? ☐Yes ☒No  If Yes, describe.

| General Description | | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|---|
| Units ☐One ☐Two ☐Three ☒Four | Concrete Slab ☐ Crawl Space ☐ | Foundation Walls Concrete/Avg | Floors Carpet/Hdwd/Avg |
| ☐Accessory Unit (describe below) | Full Basement ☒ Partial Basement ☐ | Exterior Walls Brick/Avg | Walls Plaster/Avg |
| # of Stories 2 | # of bldgs. 1 | Basement Area 816 sq. ft. | Roof Surface Rubber/Avg | Trim/Finish Wood/Avg |
| Type ☒Det. ☐Att. ☐S-Det./End Unit | Basement Finish 0% % | Gutters & Downspouts Galvanize/Avg | Bath Floor Ceramic Tile/Avg |
| ☒Existing ☐Proposed ☐Under Const. | ☒Outside Entry/Exit ☐Sump Pump | Window Type Vinyl Dbl Hng/Avg | Bath Wainscot Ceramic Tile/Avg |
| Design (Style) Traditional | Evidence of ☐Infestation | Storm Sash/Insulated Thermopane/Avg | |
| Year Built 1949 | ☐Dampness ☐Settlement | Screens Included/Avg | Heat |
| Effective Age (Yrs) 35 | | | | | | Attic ☒None | FWA ☒ HWBB ☐ Radiant ☐ | Fireplace(s) # 0 | Woodstove(s) # 0 | Driveway Surface Macadam |
| Drop Stair | Stairs | Other | Fuel Gas | Patio/Deck | Fence | ☐Garage # of Cars 4 |
| Floor | Scuttle | Cooling ☒Central Air Conditioning | Pool | Porch Front | ☐Carport # of Cars |
| Finished | Heated | Individual ☐ Other | | Other | ☐Att. ☐Det. ☒Built-In |

| # of Apartment Refrigerator 4 Range/Oven 4 Dishwasher 4 Disposal Microwave Washer/Dryer Other (describe) |
|---|
| Unit # 1 contains: 5 Rooms 2 Bedroom(s) 1 Bath(s) 899 Square feet of Gross Living Area |
| Unit # 2 contains: 4 Rooms 1 Bedroom(s) 1 Bath(s) 750 Square feet of Gross Living Area |
| Unit # 3 contains: 5 Rooms 2 Bedroom(s) 1 Bath(s) 899 Square feet of Gross Living Area |
| Unit # 4 contains: 4 Rooms 1 Bedroom(s) 1 Bath(s) 750 Square feet of Gross Living Area |

Additional features (special energy efficient items, etc.). Includes a 4 car garage, basement w/storage area and thermopane replacement windows.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). At the time of the inspection there was no apparent significant deferred maintenance. Overall, the subject was in average condition for its area and area.

*EX.1*

*Owens Appraisals Inc.*

## Small Residential Income Property Appraisal Report

File No. 005510

5461

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 3182 Werk Road | City Cincinnati | State OH | Zip Code 45211 |
|---|---|---|---|

Borrower Torrance, Saint    Owner of Public Record Same    County Hamilton

Legal Description Lot 6 Kuppin Sub

Assessor's Parcel # 211-0057-0284-00    Tax Year 2006    R.E. Taxes $ 3,787.00

Neighborhood Name Kuppin    Map Reference See Attached    Census Tract 1640 102.01

| Occupant | Owner | X Tenant | Vacant | Special Assessments $ N/A | | PUD | HOA $ | N/A | per year | per month |

Property Rights Appraised  X Fee Simple  Leasehold  Other (describe)

Assignment Type  Purchase Transaction  X Refinance Transaction  Other (describe)

Lender/Client Citifinancial    Address 5972-B Cheviot Road, Cincinnati, Ohio 45247

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  Yes  X No

Report data source(s) used, offering price(s), and date(s). N/A

 I  did   did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
There is no current contract to purchase.

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record?  Yes  No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  Yes  No
If Yes, report the total dollar amount and describe the items to be paid.  $ N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| | | Neighborhood Characteristics | | | Condominium Housing Trends | | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location | Urban | X Suburban | Rural | Property Values | Increasing | X Stable | Declining | PRICE $(000) | AGE (yrs) | One-Unit 95% |
| Built-Up | X Over 75% | 25-75% | Under 25% | Demand/Supply | Shortage | X In Balance | Over Supply | 135 Low | 40 Low | 2-4 Unit % |
| Growth | Rapid | X Stable | Slow | Marketing Time | Under 3 mths | X 3-6 mths | Over 6 mths | 195 High | 85 High | Multi-Family % |
| | | | | | | | | 170 Pred. | 55 Pred. | Commercial % |

Neighborhood Boundaries  The boundaries are Werk Road to the north, Sylved Lane to the west,
Cleves Warsaw Pike to the south and Boudinot Avenue to the east.    Vacant 5%

Neighborhood Description  The subject is located in the Westwood section of Hamilton County, Ohio.  The subject's immediate neighborhood consists primarily of detached single family residences interspersed with 2-4 and multi-family units.

Market Conditions (including support for the above conclusions)  General market conditions are currently stable with conventional financing prevalent.  No significant loan discounts or market concessions that would adversely affect market values exist.  A relatively short marketing time indicates a balanced supply and demand in the current local market.

| Dimensions 73 x 118 | Area .20 Acres | Shape Rectangular | View Nothing adverse |
|---|---|---|---|

Specific Zoning Classification C    Zoning Description Residential Multi-Family

Zoning Compliance  X Legal   Legal Nonconforming (Grandfathered Use)   No Zoning   Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?  X Yes  No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street Macadam | X | |
| Gas | X | | Sanitary Sewer | X | | Alley None | | |

FEMA Special Flood Hazard Area  Yes  X No   FEMA Flood Zone X    FEMA Map # 390210 0189D    FEMA Map Date 05/17/2004

Are the utilities and off-site improvements typical for the market area?  X Yes  No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc)?  Yes  X No  If Yes, describe.

| | | General Description | | | Foundation | | | Exterior Description materials/condition | | Interior materials/condition |
|---|---|---|---|---|---|---|---|---|---|---|
| Units  One  Two  Three  X Four | | Concrete Slab  Crawl Space | | Foundation Walls | Concrete/Avg | Floors | Carpet/LinoVinyl/Avg |
| Accessory Unit (describe below) | | Full Basement  X Partial Basement | | Exterior Walls | Brick/Avg | Walls | Plaster/Avg |
| # of Stories 2  # of Bldgs. 1 | | Basement Area 818 sq. ft. | | Roof Surface | Rubber/Avg | Trim/Finish | Wood/Avg |
| Type  X Det.  Att.  S-Det./End Unit | | Basement Finish 0% | | Gutters & Downspouts | Galvanized/Avg | Bath Floor | CeramicTile/Avg |
| X Existing  Proposed  Under Const. | | Outside Entry/Exit  Sump Pump | | Window Type | Vinyl Dbl Hng/Avg | Bath Wainscot | CeramicTile/Avg |
| Design (Style) Traditional | | Evidence of  Infestation | | Storm Sash/Insulated | Thermopane/Avg | | Car Storage |
| Year Built 1949 | | Dampness  Settlement | | Screens | Included/Avg | None | |
| Effective Age (Yrs) 35 | | Heating | | Amenities | | Driveway  # of Cars Open | |
| Attic  X None | | FWA  X HWBB  Radiant | | Fireplace(s) # 4  Woodstove(s) # | Driveway Surface Macadam | |
| Drop Stair  Stairs | | Other  Fuel Gas | | Patio/Deck  Fence | Garage  # of Cars 4 | |
| Floor  Scuttle | | Cooling | | Pool  Porch Front | Carport  # of Cars | |
| Finished  Heated | | X Individual  Other | | Other | Att  Det  X Built-in | |

| # of Appliances | Refrigerator 4 | Range/Oven 4 | Dishwasher | Disposal | Microwave | Washer/Dryer | Other (describe) |
|---|---|---|---|---|---|---|---|
| Unit # 1 contains: | 5 Rooms | 2 Bedroom(s) | 1 Bath(s) | | 889 Square feet of Gross Living Area | | |
| Unit # 2 contains: | 4 Rooms | 1 Bedroom(s) | 1 Bath(s) | | 750 Square feet of Gross Living Area | | |
| Unit # 3 contains: | 5 Rooms | 2 Bedroom(s) | 1 Bath(s) | | 889 Square feet of Gross Living Area | | |
| Unit # 4 contains: | 4 Rooms | 1 Bedroom(s) | 1 Bath(s) | | 750 Square feet of Gross Living Area | | |

Additional features (special energy efficient items, etc.)  Includes 4 car garage, basement w/storage area and thermopane replacement windows.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  At the time of the inspection there was no apparent, significant, deferred maintenance.  Overall, the subject was in average condition for its area and age.

Freddie Mac Form 72 March 2005    Page 1 of 1    Fannie Mae Form 1025 March 2005

*Ex. 1*

Owens Appraisals Inc.

5461

## Small Residential Income Property Appraisal Report

File No. 005510

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of this property? ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

Is the property subject to rent control? ☐ Yes ☒ No  If Yes, describe

The following properties represent the most current, similar, and proximate comparable rental properties to the subject property. This analysis is intended to support the opinion of the market rent for the subject property.

| FEATURE | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 3182 Werk Road | 2955 Harrison Avenue | 2495 Boudinot Avenue | 3328 Mcleland Avenue |
| | Cincinnati | | | |
| Proximity to Subject | | 0.66 MI ENE | 0.28 MI SSE | 0.50 MI NNW |
| Current Monthly Rent | $ 1,834 | $ 152,900 | $ 174,900 | $ 169,900 |
| Rent/Gross Bldg. Area | 0.56 sq. ft. | 35.13 sq. ft. | 54.56 sq. ft. | 58.08 sq. ft. |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No |
| Data Source(s) | Owner | MLS & County Auditor | MLS & County Auditor | MLS & County Auditor |
| Date of Lease(s) | N/A | Month-to-Month | Month-to-Month | Month-to-Month |
| Location | Average | Average | Average | Average |
| Actual Age | 59 Yrs (1949) | 79 Yrs (1929) | 69 Yrs (1939) | 53 Yrs (1952) |
| Condition | Average | Average | Average | Average |
| Gross Building Area | 3298 Sq. Ft. | 4352 Sq. Ft. | 3200 Sq. Ft. | 3398 Sq. ft. |

| Unit Breakdown | Rm Count | | | Size | | Rm Count | | | Size | Monthly Rent | Rm Count | | | Size | Monthly Rent | Rm Count | | | Size | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tot | Br | Ba | Sq. Ft. | Tot | Br | Ba | Sq. Ft. | | Tot | Br | Ba | Sq. Ft. | | Tot | Br | Ba | Sq. Ft. | |
| Unit # 1 | 5 | 2 | 1 | 899 | 5 | 2 | 1 | 1,088 | $ 400 | 4 | 2 | 1 | 800 | $ 550 | 4 | 1 | 1 | 848 | $ |
| Unit # 2 | 4 | 1 | 1 | 750 | 5 | 2 | 1 | 1,088 | $ 425 | 4 | 2 | 1 | 800 | $ 550 | 5 | 2 | 1 | 848 | $ |
| Unit # 3 | 5 | 2 | 1 | 899 | 5 | 2 | 1 | 1,088 | $ 410 | 3 | 1 | 1 | 800 | $ 450 | 4 | 1 | 1 | 848 | $ |
| Unit # 4 | 4 | 1 | 1 | 750 | 5 | 2 | 1 | 1,088 | $ 410 | 3 | 1 | 1 | 800 | $ 450 | 5 | 2 | 1 | 848 | $ |
| Utilities Included | Heat & Water | Water | | | | Water | | | | Water | | | | | | | | | |

Analysis of rental data and support for estimated market rents for the individual subject units reported below (including the adequacy of the comparables, rental concessions, etc.)
Comparable rental #2 and #3 was the best indicator of market rents because they are similar in square foot and room count. All three
of the comparable rentals demonstrate that the current subject rents are average.

Rent Schedule: The appraiser must reconcile the applicable indicated monthly market rents to provide an opinion of the market rent for each unit in the subject property.

| | Lease Date | | Per Unit | | Total | Per Unit | | Total |
|---|---|---|---|---|---|---|---|---|
| Unit # | Begin Date | End Date | Unfurnished | Furnished | Rents | Unfurnished | Furnished | Rents |
| 1 | 10/07 | 10/08 | $ 668 | | $ 668 | $ 650 | $ | $ 650 |
| 2 | Owner | | | | | 550 | | 550 |
| 3 | 03/07 | 03/07 | 650 | | 650 | 650 | | 650 |
| 4 | 03/07 | 03/07 | 516 | | 516 | 550 | | 550 |
| Comment on lease data | Rents are little higher | | Total Actual Monthly Rent | | $ 1,834 | Total Gross Monthly Rent | | $ 2,400 |
| than the market rents because the home | | | Other Monthly Income (itemize) | | $ | Other Monthly Income (itemize) | $ | |
| owner pays for heat and water. | | | Total Actual Monthly Income | | $ 1,834 | Total Estimated Monthly Income | $ | 2,400 |
| Utilities included in estimated rents | | ☐ Electric ☐ Water ☐ Sewer ☐ Gas ☐ Oil ☐ Cable ☐ Trash collection ☐ Other (describe) | | | | | | |

Comments on actual or estimated rents and other monthly income (including personal property)  The current rents are based The subject is currently used as a 4
family residence. Therefore, a projected rent was necessary. Forecasted rents are based on the rent schedules of similar 2-4 family
units as demonstrated by the rental and sales comparable. Water, sewage and trash collection are commonly provided in the area.

☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did  ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Hamilton County Auditor
My research ☒ did  ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Hamilton County Auditor
Report the results of the research and analysis of the prior sale history of the subject property and comparable sales (report additional prior sales on page 4).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 02/28/2007 | N/A | N/A | N/A |
| Price of Prior Sale/Transfer | 184000 | | | |
| Data Source(s) | MLS | | | |
| Effective Date of Data Source(s) | 02/15/2008 | | | |

Analysis of prior sale history of the subject property and comparable sales  According this Cincinnati the subject sold on 02/28/2007 for $184,000.
Conventional financing and D.O.M. 72.

*Ex. 1*